UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIE J. HICKLES,

      Plaintiff,

v.                                                                  Case No. 06-C-0226

DR. ENRIQUE LUY, HOLLY PUHL, ROXANNE
LYYSKI, and KEVIN GOGGINS,

      Defendants.

**MEMORANDUM DECISION AND ORDER
GRANTING MOTION FOR SUMMARY JUDGMENT**

Plaintiff Willie J. Hickles, an inmate at Fox Lake Correctional Institution ("FLCI"), brought several claims under 42 U.S.C. § 1983 against defendants, alleging they violated the 8th and 14th Amendments as well as various state laws by providing him inadequate medical treatment and showing deliberate indifference to his medical condition. Defendants, all staff members at FLCI, have moved for summary judgment on the ground that Hickles failed to exhaust his administrative remedies. For the reasons that follow, the defendants' motion will be granted.

**FACTUAL ALLEGATIONS**

Hickles' version of the facts, as gleaned from his complaint, is as follows. On August 16, 2006, FLCI medical staff took a culture for a spider bite Hickles had received, and also gave him medication for it. After taking the medication, he suffered extreme diarrhea and wide-ranging body rashes. On August 22, 2005, he was called back to the medical unit for another culture, at which

time defendant Dr. Luy, using contaminated surgical tools, made a two-inch incision in his right hamstring and injected him with an unknown substance. The bandage was loosely wrapped, and after returning to his cell, Hickles noticed blood flowing out. Thereupon, he alerted the unit sergeant, defendant Roxanne Lyyski, who told him to return to the medical unit. However, when he returned to the medical unit and explained that Lyyski had sent him, medical staff said that no one had called to authorize his visit and that he needed to return to his cell. Hickles returned to his cell and went to sleep. Shortly thereafter, Lyyski awakened Hickles and asked why he had not returned to the medical unit. Lyyski told him that defendant Goggins had said Hickles should be sent to another unit (presumably, as punishment) for refusing to return to the medical unit. Another FLCI staff member, Captain Lockwood, intervened and escorted Hickles to the medical unit.

Over the next month, Hickles' condition worsened as a result of the medication he was given. Hickles pleaded with the medical staff to take him to an outside hospital, but they refused. Finally, on September 28, 2005, he was taken by ambulance to Waupun Memorial Hospital and placed in intensive care and received medication intravenously for the next 17 days. Hickles claims he continues to suffer from the residual effects of his illness and that the deliberate indifference to his serious medical needs exhibited by each of the defendants changed the quality of his life. He seeks monetary damages of $1.250 million, a conditional transfer to a minimum security facility in Milwaukee and disciplinary actions against all of the parties involved. (Compl. at 3-5.)

## ANALYSIS

Defendants contend that plaintiff's claims should be dismissed for failure to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA") of 1995 bars suits by

2

Case 1:06-cv-00226-WCG    Filed 12/18/06    Page 2 of 9    Document 37

prisoners "with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Complaints alleging inadequate medical treatment in a prison are considered complaints about "prison conditions," and thus fall under the exhaustion requirement. *See Davis v. Streekstra*, 227 F.3d 759, 761 (7th Cir. 2000) (citing *McCarthy v. Bronson*, 500 U.S. 136 (1991)). Exhaustion means properly completing all of the steps included in the process. *Pozo v. McCaughtry*, 286 F.3d 1022, 23 (7th Cir. 2002) ("[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred."). Moreover, exhaustion must be completed before a prisoner plaintiff commences his suit. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 537 (7th Cir. 1999). In order to establish that a plaintiff failed to exhaust his administrative remedies, a defendant must first show that an administrative remedy was available. *Johnson v. Litscher*, 260 F.3d 826, 829 (7th Cir. 2001). However, the PLRA requires exhaustion even where the grievance process does not permit an award of the specific relief the aggrieved inmate is seeking. *Booth v. Churner*, 532 U.S. 731, 738-39 (2001). This means that a prisoner seeking damages must exhaust even if damages are not recoverable in the administrative process.

Wisconsin has established the Inmate Complaint Review System ("ICRS") as the principal administrative remedy for prisoner complaints. The scope of the ICRS is set forth in Wis. Admin. Code § DOC 310.08, which provides that prisoners may bring complaints[1] "to raise significant issues regarding rules, living conditions, [and] staff actions affecting institution environment . . . ." § 310.08(1). Under the ICRS, an inmate must file a complaint with the institution complaint

---

[1] Subsections 310.08(2) and (3) set forth exclusions to a prisoner's use of the ICRS, none of which is applicable in this case. *See* Wis. Admin. Code § DOC 310.08(1)-(3).

3

examiner ("ICE") within 14 calendar days after the occurrence giving rise to the complaint, except that the examiner may accept a late complaint upon a showing of good cause. *See* Wis. Admin Code § DOC 310.09(6). The examiner is to acknowledge and review the complaint in writing within 5 working days of receipt of same, *id.* § DOC 310.11(2), and within 20 working days of acknowledgment must either reject the complaint or send a recommendation to the appropriate reviewing authority. *Id.* § DOC 310.11(11). An inmate has 10 calendar days to appeal an adverse ICE decision by filing a written request for review with the corrections complaint examiner ("CCE").[2] *Id.* § 310.13(1).

Hickles filed three prisoner complaints in which he raised concerns relating to the allegations made against the defendants in this case. On August 29, 2005, Hickles filed complaint number FLCI-2005-26433, in which he alleged that on August 22, 2005, Dr. Luy laughed while he made an unnecessary two-inch incision in Hickles' hamstring, packed the incision with an unknown substance, bandaged it poorly such that it bled for two hours after he left the office, and then sent Hickles on his way, telling him he would see him again in two days. (Aff. of John Ray, Ex. B at 1.) However, according to the ICE Report, Dr. Luy performed an Incision and Drainage procedure in which he made an incision with a scalpel so that the pus could drain from the wound. The wound was then packed with iodaform and dressed loose without suturing to allow for the subsequent removal of the iodaform. Hickles was seen the following day for a dressing change, and then every other day for a dressing change by an RN. The Health Services Manager saw Hickles several times

---

[2] If the prisoner makes a written appeal, the CCE recommends a decision to the DOC Secretary, *id.* § DOC 310.13(6), who then accepts, adopts with modifications, or rejects the CCE's recommendation (or returns the appeal with instructions for further investigation). *Id.* § DOC 310.14(2). This final review step was never reached here, as Hickles never filed any written appeals of the three adverse ICE decisions. *See* discussion *infra*.

4

after the procedure and explained it to him. (*Id.* at 3.) Noting that medical treatment was a matter of professional judgment and inmate dissatisfaction, without more, was not a basis for questioning such judgment, the examiner recommended that the complaint be dismissed, which was done on September 22, 2005. (DPFOF ¶ 8.)

Also on August 29, 2005, Hickles filed complaint number FLCI-2005-26438, alleging that when he got back to his unit after Dr. Luy had treated him on August 22, 2005, he was bleeding from his wound. Defendant Lyyski called Health Services and was told Hickles should go back to get checked out. When he arrived, however, Hickles was told no one from his unit had called and he was sent back to his unit. Twenty minutes later, Lyyski asked what he was doing back on the unit and said Health Services was calling. Hickles states he was tired and asked to see a "white shirt," at which time Lyyski started threatening him. In the meantime, Captain Lockwood arrived and escorted Hickles to Health Services. Hickles claims that Lyyski and Goggins interfered with his access to medical treatment by sending him on a "wild goose chase" between his cell and the medical unit, as described in his complaint to this court. (Ray Aff., Ex. C at 1-2.) The ICE Report concerning this complaint found, however, that Hickles was initially turned away at Health Services because of a communication error. "The officer was not notified that inmate Hickles had been sent up to be seen; consequently, he returned to his unit and had to be called back up a short while later." (Ray Aff., Ex. C at 4.) Concluding that it was not done intentionally or to deny him treatment, the reviewer dismissed this second complaint on September 26, 2005. (DPFOF ¶ 12.)

Finally, Hickles filed a third complaint[3] on September 6, 2005, alleging that defendant Goggins stalked and intimidated him outside the medical doctor's office. (Compl., Ex. C at 1-2.)

---

[3] As this third complaint was lost after it was scanned, it is unclear whether it was assigned an official file number. Hickles submitted his copy of the third complaint, however. (*See* Compl., Ex. C at 1-2.)

5

The reviewer recommended that this complaint likewise be dismissed but on procedural, rather than substantive, grounds. The original complaint could not be located after it was scanned, so the ICE department notified Hickles on September 8, 2005, that he needed to submit a replacement complaint. (*See* Ray Aff., Ex. D at 2.) After Hickles failed to resubmit this third complaint, it was dismissed on September 26, 2005. No grievance was filed concerning Hickles' claim that over the next month his condition worsened because of the medication he was given until he had to be taken by ambulance to the hospital on September 28, 2005.

Defendants argue that summary judgment is appropriate on all of Hickles' claims against defendants Luy, Lyyski, Puhl and Goggins because he failed to appeal any of the administrative dismissals of his complaints against them. (*See* Ray Aff. ¶¶ 21-22.) Since complete exhaustion of the administrative process is required before an inmate can bring a civil action challenging the conditions of his confinement, *Perez*, 182 F.3d at 535, defendants contend that Hickles' action must be dismissed. Hickles, on the other hand, argues that he was not required to appeal the dismissals of his administrative complaints because there is no available administrative remedy to exhaust. Although it is not entirely clear from his response to defendants' motion, he appears to argue that once he was transferred to an outside hospital, there was no further remedy available under the administrative process. (Mot. to Deny Defs.' Summ. J. Mot. at 3.)

A careful reading of *Booth v. Churner* suggests that Hickles is mistaken. In *Booth*, the Supreme Court held that the exhaustion requirement under the PLRA relates to the grievance procedure, not the specific remedy the prisoner is seeking. 532 U.S. at 739 ("[O]ne 'exhausts' processes, not forms of relief, and the statute provides that one must."). Thus, prisoners must exhaust the administrative process, regardless of the relief available thereunder. *Id.* at 741. An

6

exception exists where the administrative officers "have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust." *Id.* at 736 n.4. A further exception would seem to exist when the inmate prevails on his grievance before the process is completed. *See Thornton v. Snyder*, 428 F.3d 690, 697 (7th Cir. 2005) ("[T]he defendants' notion that Thornton should have appealed to higher channels after receiving the relief he requested in his grievances is not only counter-intuitive, but it is not required by the PLRA."). Otherwise, a prisoner must complete the prison administrative process, even if the only remedy he seeks, money, for example, is not available. *Id.* at 734.

In *Porter v. Nussle*, 534 U.S. 516 (2002), the Supreme Court held that exhaustion is required even for isolated incidents such as a correctional officer's use of excessive force. The Court concluded that even when money damages are not available as a remedy, the exhaustion requirement serves important interests:

> In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation . . . . In other instances, the internal review might filter out some frivolous claims . . . . And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Id.* at 525. Requiring exhaustion for all complaints also furthers important correctional interests by bringing to the attention of administrators seemingly isolated incidents that may be indicative of larger problems. "An unwarranted assault by a corrections officer may be reflective of a systemic problem traceable to poor hiring practices, inadequate training, or insufficient supervision." *Id.* at 530. Finally, the Court noted that it made no sense to allow a prisoner immediate access to court when a guard assaults him on one occasion, but not when beatings are widespread or routine. *Id.* at 531.

7

Based on the foregoing, I conclude that Hickles failed to exhaust the administrative process that was available in the Wisconsin prison system on the claims he now seeks to bring. The ICRS is a "process by which grievances may be expeditiously raised, investigated, and decided." Wis. Adm. Code § DOC 310.01. Hickles prevailed on none of his complaints. Each was dismissed at the initial step, and he made no effort to seek further review.[4] Under the PLRA, he was required to do more. Having received an adverse decision, he was required to exhaust the administrative process by seeking further review. To the extent he claims to have suffered injury as a result of the denial of adequate medical care, he is in no different position than the inmates in *Booth* and *Porter*, who claimed they were injured in an assault. The fact that he cannot recover monetary damages under the ICRS does not mean that there was no available administrative process for him to exhaust. The purpose of the ICRS is not to award damages, but to decide inmate grievances. At step one of the process, the ICE found with respect to Hickles' first complaint that Dr. Luy had provided proper medical care. If Hickles intended to file a civil rights suit over this issue, he should have appealed the initial decision.

Likewise with respect to Hickles' second complaint. The ICE rejected Hickles' claim that defendants Lyyski and Goggins were trying to interfere in his medical care, and concluded that Hickles was sent back to his unit as a result of a communication error at Health Services. If Hickles intended to make a civil rights case out of this incident, he was required to appeal the adverse

---

[4] The fact that Hickles may have been in the hospital for 17 days does not excuse his failure to exhaust. Although an appeal from an adverse decision is to be filed within 10 calendar days, the time can be extended for good cause. Wis. Adm. Code Ch. DOC 310 App., n. § 310.13.

decision.[5] And as to his third complaint, which seems unrelated to any of the claims here, Hickles did not even complete the first step in the ICRS process.

Finally, it should also be noted that this is not a case in which Hickles had already received the only available relief he seeks. In the complaint he filed in this court, Hickles seeks, in addition to monetary damages, "a conditional transfer to a minimum in Milwaukee County" and "disciplinary actions against all parties involved." (Compl. at 5.) A transfer to a different institution and discipline for inappropriate behavior are among the kinds of relief that could conceivably flow from pursuit of the administrative process if his complaints were substantiated. The scope of Wisconsin's prison grievance process is wide. *Johnson v. Litscher*, 260 F.3d 826, 829 (7th Cir. 2001). Under Wisconsin's ICRS, inmates may bring complaints "to raise significant issues regarding rules, living conditions, and staff actions affecting institution environment . . . ." Wis. Adm. Code §DOC 310.08(2). The ICRS is specifically intended as a process for resolving staff issues. Wis. Adm. Code. § DOC 310 App. at n. 310.16 ("The ICRS is an appropriate forum for resolving staff issues."). Because Hickles failed to fully utilize it for that purpose, his action must be dismissed.

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment is granted.

Dated this   18th   day of December, 2006.

                                                    s/ William C. Griesbach
                                                  William C. Griesbach
                                                  United States District Judge

---

[5] Even if Hickles had exhausted as to this incident, being sent back to his unit on one occasion before receiving treatment does not amount to cruel and unusual punishment.

9